**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: May 28, 2014**

_____
**Hon. Robert D. Martin
United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Lyall and Betty Sharer,                                                                          Chapter 7

          Debtors.                                                                       Case No. 14-10029

Lyall and Betty Sharer
          Plaintiffs,
  v.                                                                                                      Adv. No. 14-00012

State Bank of Cross Plains,

          Defendant.

MEMORANDUM DECISION

In the second of two cases filed within seven months, Mr. and Mrs. Sharer (the "debtors") have delayed a noticed foreclosure sale of their residence by alleging that State Bank of Cross Plains ("SBCP") lost its right to foreclose by violating Truth in Lending rules prior to obtaining the foreclosure judgment. SBCP seeks dismissal of debtors' complaint and sanctions against debtors' counsel under Rule 9011 of the FRBP.

SBCP holds a 2010 note secured by interests in debtors' homestead and business assets in the amount of $846,819.36, on which more than $912,669.25 is now due. At least $17,792 in

delinquent real estate taxes and $42,000 in other judgment liens also encumber the debtors' house. SBCP has valued the house at $700,000 as of May 4, 2012, and debtors have scheduled its value as $594,150. The Sharers have no equity in the house.

In November 2010, debtors refinanced several obligations of their business when SBCP sought to enforce personal guaranties secured by their house. Debtors now contend that was a consumer credit transaction because their primary purpose was to keep their residence. The refinance Note states: "Loan Purpose: renew #66831, #69513 and #69676; term out Floor Plan, consolidate and refinance commercial real estate plus new money to pay RE taxes." *Debtors' Exhibit A*. The Sharers signed and dated the Note. They also signed a Declaration of Business Purpose ("Declaration"). The Declaration states:

> Borrower Declaration: The Borrower has applied to the above named Lender for a loan in the amount shown above or such lesser amount as Lender agrees to extend. The Borrower represents and warrants to Lender that the proceeds of the loan will be used primarily (50% or more) for the business purpose stated above, and not primarily for a personal, family, household or agricultural purpose.
>
> Borrower further acknowledges that if the loan applied for is for business purposes, the loan is not subject to the Wisconsin Consumer Act, and that disclosures under the Federal Truth in Lending Act and Federal Reserve Board Regulation Z are not required.
>
> By signing this Statement, Borrower acknowledges reading, understanding, and agreeing to all its provisions.

*Debtors' Exhibit B*. SBCP did not provide debtors TILA or RESPA documents as part of the transaction.

In 2012, SBCP filed a foreclosure complaint to which debtors filed an answer and affirmative defenses, alleging that SBCP did not comply with the Truth In Lending Act ("TILA") and Regulation Z. On December 28, 2012, the state court granted summary judgment of foreclosure without addressing the debtors' alleged counterclaim regarding TILA.

2

On November 6, 2013, after their first Chapter 13 case had been dismissed, the debtors sent SBCP a notice rescinding the loan alleging SBCP failed to comply with TILA's rescission requirements, and removing SBCP's security interest in debtors' property. The rescission letter states:

> Please provide me with an itemization of the current principal balance, the loan disbursements, the loan charges, amounts received by the sale of my clients' assets and all payments received from my client. This will allow me to determine the exact amount State Bank of Cross Plains needs to tender my clients. I would ask that you provide this within 15 days, as required by Wis. Stat. § 138.052(7s).

On January 6, 2014, debtors filed their second Chapter 13 case (later converted to Chapter 7) and brought an adversary proceeding in that case to enforce rescission and undo the foreclosure judgment entered by the state court. Specifically, debtors stated two causes of action in their initial complaint: (1) violation of the TILA § 1635(a) and Reg. Z § 226.23(b), and (2) violation of Wis. Stat. § 138.052(7s). SBCP moved to dismiss the adversary proceeding because (1) the court lacks subject matter jurisdiction under the compulsory counterclaim rule, claim preclusion, and the *Rooker-Feldman* doctrine, and (2) that the debtors failed to state a claim for which relief can be granted. In addition, SBCP moved for relief from stay for cause and for lack of equity in the property, which was granted. SBCP has also moved for sanctions.

Both parties have submitted supplemental briefing. Debtors withdrew their Wis. Stat. § 138.052(7s) claim conceding that the court does not have subject matter jurisdiction under *Stern v. Marshall*. The only remaining cause of action is SBCP's alleged violation of TILA § 1635(a) and Reg. Z § 226.23(b). Debtors have requested the following relief:

   i. Rescission of this transaction.

   ii. Termination of defendant's security interest in debtors' property that is security for the loan.

3

      iii. Return of any money or property given by debtors to defendant in connection with the Loan.

      iv. Statutory damages of $2,000 for the disclosure violations.

      v. Statutory damages of $2,000 for defendant's failure to timely respond to debtors' rescission notice.

      vi. Forfeiture of return of loan proceeds.

      vii. Actual damages in the amount to be determined at trial.

      viii. Reasonable attorney fees and costs.

      ix. Any other statutory damages provided by TILA or Reg. Z.

      x. Award such other and further relief as the court deems just and proper.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations set forth in the complaint, taken as true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In the Seventh Circuit, the court "must accept a plaintiff's factual allegations as true." *In re Boruch*, 505 B.R. 508, 511 (Bankr. W.D. Wis. 2014) (citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). "The court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to the plaintiff when reviewing a defendant's motion to dismiss." *In re Blumberg,* 112 B.R. 236, 239 (Bankr. N.D. Ill. 1990) (citing *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir. 1979)). "[B]ut some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *In re Boruch*, 505 B.R. at 511 (citing *Brooks*, 578 F.3d at 581).

**Jurisdiction.**

This court lacks subject matter jurisdiction of the claims advanced. The *Rooker–Feldman* doctrine dictates that "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *In re Fischer*, 483 B.R. 877, 882 (Bankr. E.D. Wis. 2012) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554–55 (7th Cir. 1999)).  It applies both to claims actually raised before the state court and to claims that are "inextricably intertwined with state court determinations." *Id*.  "The *Rooker–Feldman* doctrine analysis is not altered by the fact that the federal claim is 'cloaked in the guise of an adversary proceeding in bankruptcy court. . ..'" *In re Fischer*, 483 B.R. at 883 (citing *Zurich Am. Ins. Co. v. Superior Court for Cal.*, 326 F.3d 816, 821 (7th Cir. 2003)).

The Seventh Circuit Court of Appeals recently held in an "unpublished, non-precedential" decision that the *Rooker-Feldman* doctrine may not bar an award for damages if the award does not disturb the state court's judgment of foreclosure. *Canen v. U.S. Bank Nat. Ass'n*, No. 13-2777, 2014 WL 685207 (7th Cir. Feb. 24, 2014). The facts in *Canen* were similar to the facts in this case. The Canens refinanced their home mortgage in 2004. Later, U.S. Bank filed a foreclosure action. The Canens did not respond, and on October 3, 2007, U.S. Bank obtained a default judgment of foreclosure. After receiving a bankruptcy discharge in August 2009, the Canens sued U.S. Bank in the United States District Court. The Canens alleged eight causes of action including (1) a Truth in Lending Act claim, alleging that various defendants provided noncompliant Notices of Right to Cancel and otherwise "hid" the identity of the true lender; (2) A Quiet Title claim, alleging that the Canens have a superior title claim to anyone claiming an ownership interest in their foreclosed residence; and (3) a fraudulent inducement claim alleging that various defendants misled the Canens into taking out a mortgage that they could not repay.

The District Court held that each of the claims attempted to rescind the mortgage loan because each claim was inextricably intertwined with the state court foreclosure adjudication. As such, each was barred by the *Rooker-Feldman* doctrine because, if successful, these claims would "effectively require [the Court] to vacate the state court foreclosure judgment, which is exactly the sort of action the *Rooker-Feldman* doctrine forbids." *Canen v. U.S. Bank Nat. Ass'n*, 913 F. Supp. 2d 657, 662 (N.D. Ind. 2012) aff'd as modified, 13-2777, 2014 WL 685207 (7th Cir. Feb. 24, 2014).

On appeal, the Canens argued that the different legal theories in the state foreclosure action and the federal action caused the *Rooker-Feldman* doctrine to "drop out." *Canen*, 2014 WL 685207 at 1. The Seventh Circuit Court, noting the difference between *Rooker-Feldman* and claim preclusion, disagreed, stating that *Rooker-Feldman* instead "establishes that district courts lack subject-matter jurisdiction to set aside judgments that state courts have entered in civil cases; the reason the plaintiff gives for seeking this relief is irrelevant." *Id*. From there, the Court distinguished between the Canens' claim for quiet title, and the other two claims - TILA and Fraud. The Court held that the quiet title claim was completely barred because the sole available remedy (quiet title) "would directly upset the judgment of foreclosure," and the Canens had an opportunity – but failed – to raise this claim in the state court foreclosure action. *Id.* Accordingly, the Court dismissed the quiet title claim as barred by *Rooker-Feldman*. *Id*.

But the Court then held that *Rooker-Feldman* was not a complete bar to the remaining claims. The Court explained that although these claims could deny a legal conclusion reached in the state court foreclosure case, they could also possibly provide other relief "via awards of damages without disturbing the state court's judgment." *Id*.  In such cases, "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id*.

6

Debtors contend that because the holding in *Canen* is nonprecedential, we should ignore it. But just because this court is not bound to follow the decision, does not mean that its rationale is not persuasive.

The holding in *Canen* is hardly a new take on the well-established *Rooker–Feldman* doctrine. The Court of Appeals has previously explained that:

> [t]he *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Zurich Am. Ins. Co. v. Superior Court for Cal.*, 326 F.3d 816, 821 (7th Cir. 2003) (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). In *Canen*, the Appeals Court simply observed that *Rooker-Feldman* did not apply where it was "possible to provide relief on . . . claims via awards of damages without disturbing the state court's judgment." *Canen*, 2014 WL 685207 at 1. Like the Canens, the debtors in this case have requested statutory damages and the award of such damages would not disturb the state court's judgment of foreclosure.

What survives the analysis used in *Canen* is that all clams of the debtors which would upset the judgment of foreclosure are beyond this court's jurisdiction, even if the debtors may have some claims for damages that survive the application of the *Rooker–Feldman* doctrine. Thus, there is no bar to SBCP's continued reliance on the title determination of the State Court's foreclosure judgment. Nor, is there any basis to continue to stay under SBCP 11 U.S.C. § 362.

**Limitations.**

To assess the damage claims advanced by debtors, we must consider whether they are barred by any statute of limitations. This may be unnecessary because of separate limitations on this court's jurisdiction over disputes that are not central to bankruptcy relief as illustrated in *Stern v.*

7

*Marshall*. But we will analyze a bit further for the benefit of the trustee in bankruptcy should he pursue the damage claims for the benefit of creditors.

The Sharers enumerated requests for relief, categories (iv), (v), (vii), (viii), (ix) and (x), pertaining to "statutory damages of $2,000", "actual damages", "reasonable attorney fees and costs", and "any other statutory damages provided by TILA or Reg Z." (Compl. p. 8.).

Under TILA:

> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

15 U.S.C. § 1635(g). The Sharers' remaining requests for relief fall within this array of relief laid out under 15 U.S.C. § 1640(a). Under the subsection, "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, . . . . with respect to any person is liable to such person in an amount equal to the sum of:"

> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000, (iii) in the case of an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures; or (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or
>
> (B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $1,000,000 or 1 per centum of the net worth of the creditor;

>(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court;

15 U.S.C. § 1640(a). However, 15 U.S.C. § 1640(e) bars any claims for damages under 15 U.S.C. §1640 after one year "from the date of the occurrence of the violation."

The Sharers, in their Complaint, premise their entire TILA claim on three specific occurrences allegedly in violation of TILA: (1) In paragraph 5, they contend that SBCP violated TILA "by failing to deliver to the debtors two copies of a notice of the right to rescind;" (2) In paragraph 6, they allege that SBCP violated TILA by failing to deliver certain "material" disclosures required under 15 U.S.C. § 1638; and (3) in paragraph 9, the Sharers allege SBCP violated TILA when it refused to rescind the loan upon the Sharers' demand. As to these first two occurrences, the statute of limitation has clearly run. Courts have held that a TILA claim for failure to provide disclosures accrues for statute of limitations purposes when the mortgage loan documents were signed. *See, Salois v. Dime Savings Bank*, 128 F.3d 20, 25 (1st Cir. 1997); *King v. State of California*, 784 F.2d 910, 914 (9th Cir. 1986) (same); *Fernandes v. JPMorgan Chase Bank*, N.A., 818 F.Supp.2d 1086, 1094 (N.D. Ill. 2011) (same); *Arriaga v. Wells Fargo Bank, N.A.*, 2011 WL 4738522, 3 (N.D. Ill. Sept. 30, 2011) ("TILA violations accrue on the date upon which the loan instrument is signed."). Here, the alleged violations transpired more than three years ago when the debtors signed the loan on November 29, 2010. Thus, the statute of limitation pursuant to 15 U.S.C. § 1640(e) bars any claims for damages related to these two occurrences.

This leaves only the Sharers' request for damages arising from SBCP's alleged refusal to rescind the loan on November 6, 2013. The First Circuit Court of Appeals explained that "[a]lthough the statutory language admits of no explicit exception, . . . events other than the expiration of the three-year period or the sale of the encumbered property can cut off the debtor's

9

right of rescission." *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 188 (1st Cir. 2006). "[T]he TILA statute merely sets out the right's maximum life span and does not affect procedural or substantive requirements that might end its existence even earlier." *Id.* (citing *Albano v. Norwest Fin. Haw. Inc.*, 244 F.3d 1061, 1064 (9th Cir. 2001) (obtaining a default judgment of foreclosure extinguishes the debtor's right of rescission). The court further elaborated:

> This is a result driven not only by precedent but also by common sense. Fairly read, the TILA contains no hint of a legislative intent to preempt normally applicable state-law preclusion rules or otherwise to undercut Congress's general directive that federal courts should afford state-court judgments the same preclusive effect that they would receive in the courts of the rendering state. *See* 28 U.S.C. § 1738. We already have determined that, as a matter of Puerto Rico law, the earlier foreclosure judgment precluded Vergara's later assertion of a TILA claim. *See supra* Part II(B). Accordingly, the entry of this preclusive judgment extinguished Vergara's TILA right of rescission. *See Albano*, 244 F.3d at 1064 (reaching a similar conclusion when a TILA claim was barred under state preclusion law).

*Id*.

Here, too, there is no doubt that each element of claim preclusion (res judicata) is met: identity between the parties or their privies in the prior and present suits, identity between the causes of action in the two suits, and a final judgment on the merits in a court of competent jurisdiction. *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). "The Full Faith and Credit Act requires that the Court apply Wisconsin law and recognize the preclusive effect of the previous Wisconsin state court judgment in this proceeding." *Dye v. Ameriquest Mortgage Co*., 2007 WL 4418195 (E.D. Wis. Dec. 17, 2007) aff'd, 289 F. App'x 941 (7th Cir. 2008) (citing *In re Dollie's Playhouse, Inc*., 481 F.3d 998, 1000 (7th Cir. 2007)). "In describing claim preclusion in general terms, the Wisconsin Supreme Court has stated, 'a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings.'" *Id*. (citing *Bugher*, 525 N.W.2d 723).

SBCP and the Sharers were parties and there is a final judgment in the foreclosure action. In Wisconsin, judgment of foreclosure and sale is a final judgment appealable as of right which must be appealed within the time prescribed by statute. *Shuput v. Lauer*, 109 Wis. 2d 164, 325 N.W.2d 321 (1982). The causes of actions in the state court action and this proceeding are premised upon a common nucleus of operative facts. "The documents associated with the parties' contractual mortgage agreement were the foundation for the foreclosure action and the adversary action." *Dye v. Ameriquest Mortgage Co.*, CIV. 07-C-430, 2007 WL 4418195 (E.D. Wis. Dec. 17, 2007) aff'd, 289 F. App'x 941 (7th Cir. 2008). "That the legal theories employed or remedies sought may differ in each of the actions is not relevant to a transactional analysis of the claims." *Id*. Thus, there is an identity between the causes of action in the two suits, and all elements of res judicata are met.

**Not a Consumer Transaction.**

Finally, the Sharers' entire claim depends on the November 2010 loan consolidation being a "consumer credit transaction" as defined in 12 C.F.R. § 226.1(c). It is clear from the pleadings that the debtors can prove no set of facts in support of their claim which would entitle them to relief.

Under 12 C.F.R. § 226.1(c), Regulation Z applies to individuals or businesses that offers or extends credit when four conditions are met:

(1) In general, this regulation applies to each individual or business that offers or extends credit when four conditions are met:

(i)The credit is offered or extended to consumers;

(ii)The offering or extension of credit is done regularly;

(iii)The credit is subject to a finance charge or is payable by a written agreement in more than four installments; and

11

      (iv)The credit is primarily for personal, family, or household purposes.

12 C.F.R. § 226.1(c)(1). Debtors argue that their primary purpose in entering into the loan was to protect their residence. Yet, attached to debtors' complaint is a Commercial Promissory Note ("Note"), dated November 29, 2010 which describes the purpose of the loans' consolidation: "Loan Purpose: renew #66831, #69513 and #69676; term out Floor Plan, consolidate and refinance commercial real estate plus new money to pay RE taxes." *Debtors' Exhibit A*. The Sharers signed and dated the Note.

    In addition, the debtors have attached a Declaration of Business Purpose ("Declaration"), also signed and dated November 29, 2010. The Declaration states:

> Borrower Declaration: The Borrower has applied to the above named Lender for a loan in the amount shown above or such lesser amount as Lender agrees to extend. The Borrower represents and warrants to Lender that the proceeds of the loan will be used primarily (50% or more) for the business purpose stated above, and not primarily for a personal, family, household or agricultural purpose.
>
> Borrower further acknowledges that if the loan applied for is for business purposes, the loan is not subject to the Wisconsin Consumer Act, and that disclosures under the Federal Truth in Lending Act and Federal Reserve Board Regulation Z are not required.
>
> By signing this Statement, Borrower acknowledges reading, understanding, and agreeing to all its provisions.

*Debtors' Exhibit B*. SBCP did not provide debtors TILA or RESPA documents as part of the transaction. Finally, debtors have attached the answer they had filed in the state court foreclosure action. *Debtors' Exhibit C*. Paragraph 3 of the answer states:

> . . . Defendants asserts that the Note, Mortgage and Commercial Security Agreements attached to Debtors' Complaint . . . speak for themselves and, therefore, Defendants deny any allegations contained in said paragraph that are contrary to said document.

    Contrary to their prior statement, Sharers now ask this court to disregard the express language contained in the Note, Mortgage and Commercial Security Agreements and hold that

12

some external considerations should determine whether the loan was primarily for personal, family, or household purposes. Moreover, the debtors cite no law that would transform their agreement into a consumer transaction. This court is bound by the general rule of contract law in Wisconsin that "the best indication of the parties' intent is the language of the contract itself." *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, 330 Wis. 2d 340, 356, 793 N.W.2d 476, 484. "We construe the contract language according to its plain or ordinary meaning." *Id*. (citing *Huml v. Vlazny,* 2006 WI 87, 293 Wis. 2d 169, 176, 716 N.W.2d 807). "If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence. Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent." *Id*. (citing *Capital Invs., Inc. v. Whitehall Packing Co.*, 91 Wis. 2d 178, 190, 280 N.W.2d 254 (1979)).

      The Sharers have not pointed to anything in the loan documents which would indicate that the agreement was somehow ambiguous. Thus, the parties' intent is demonstrated by the language of the contract itself. Here, that intent is abundantly clear and there is simply nothing within "the four corners of the contract" which would indicate that the loan was made primarily for personal, family, or household purposes. Without any factual basis for the court to conclude that this is a consumer transaction, there is simply no merit to the plaintiff's TILA claim. Thus, dismissal must also be granted for debtors' failure to state a claim. Also, because SBCP has shown that there is no genuine dispute as to a material fact, it is entitled to summary judgment as a matter of law.

**Sanctions.**

Bankruptcy Rule 9011 provides:

> (b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b). Because Bankruptcy Rule 9011 is modeled after Federal Rule of Civil Procedure 11, *In re Park Place Assocs.*, 118 B.R. 613, 616 (Bankr. N.D. Ill. 1990), courts look frequently to cases that interpret Rule 11 when construing Bankruptcy Rule 9011. *In re Famisaran*, 224 B.R. 886, 894 (Bankr. N.D. Ill. 1998). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004). As such, the Rule focuses on the conduct of the parties and not the results of the litigation.

The burden of proof is on the moving party to prove that sanctions are warranted. *In re Weihert*, 489 B.R. 558, 568 (Bankr. W.D. Wis. 2013). Once a prima facie case has been established, "the burden shifts to the party from whom the sanction is sought" to show that the Rule has been complied with. *Id*.

A court may impose sanctions if it finds a violation of any one of the four subdivisions of Bankruptcy Rule 9011(b). "[T]he four subdivisions of Rule 9011(b) fall into two general

14

categories: the 'frivolousness' clauses (or the 'objective component') and the 'improper purpose' clause (or the 'subjective component')." *In re Am. Telecom Corp.*, 319 B.R. 857, 867 (Bankr. N.D. Ill. 2004), aff'd, A*m. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc*., No. 04 C 8053, 2005 WL 5705113 (N.D. Ill. Sept. 7, 2005). Here, the defendant moves for sanctions under both categories - the "improper purpose" clause and the "frivolousness'" clauses.

The "improper purpose clause," under Bankruptcy Rule 9011(b)(1) is directed at abusive litigation practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs, or filed to harass. *Troost v. Kitchin (In re Kitchin)*, 327 B.R. 337, 366 (Bankr. N.D. Ill. 2005). "A court must look to objectively ascertainable circumstances that support an inference that the non-movant's purpose for filing a paper was improper within the meaning of Bankruptcy Rule 9011(b)(1)." *In re Ryan*, 411 B.R. 609, 615 (Bankr. N.D. Ill. 2009). "A paper interposed for any improper purpose is sanctionable whether or not it is supported by the facts and the law, and no matter how careful the pre-filing investigation." *Id*.

SBCP argues that the debtors filed the adversary proceeding in bad faith with intent to harass the movant, to cause unnecessary delay, and to needlessly increase the cost of litigation. Its proof of bad faith primary relies on the fact that the debtors filed their second bankruptcy only a day before a scheduled sheriff's sale on the property. Filing a bankruptcy petition on the eve of a foreclosure sale does not constitute, by itself, an improper purpose; it is in no way unusual in bankruptcy cases. Thus, an award for sanctions under this clause is unwarranted.

As to the frivolous clauses, the Seventh Circuit Court of Appeals has identified several factors that are relevant in determining whether a reasonable inquiry was conducted under Rule 11 and therefore under Rule 9011:

> To measure the reasonableness of a party's inquiry into the factual bases of its claims, we look to a number of factors including: "whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her

15

> client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts."

*Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1028 (7th Cir. 1999) (quoting *Brown v. Federation of State Medical Bds. of the United States*, 830 F.2d 1429, 1435 (7th Cir. 1987)). The reasonable inquiry standard is "said to be objective." *In re Slaughter*, 191 B.R. 135, 140 (Bankr. W.D. Wis. 1995). The reasonableness of an attorney's inquiry "focuses on inputs rather than outputs, conduct rather than result." *Id*. The right question to ask in this inquiry is "not whether the claim itself was frivolous or nonfrivolous, but whether the attorney conducted an adequate inquiry into the facts and the law before he filed the claim." *Id*.

      Here, SBCP argues that the allegations in the adversary proceeding are frivolous and meritless because they lack support under existing law. After the Appeals Court's ruling in *Canen*, it is clear that some of the debtors' claims were not entirely barred by the *Rooker-Feldman* doctrine. But, those remaining claims were barred by (1) statutes of limitations, (2) res judicata, and/or (3) the absence of any support for the predicate fact that there was a "consumer loan." The question is not whether the claim itself is frivolous but whether "the attorney conducted an adequate inquiry into the facts and the law before he filed the claim." *Slaughter*, 191 B.R. at 140. In this case, the debtors' attorney filed the adversary action to delay a foreclosure sale when modest inquiry would have revealed that the statute of limitation clearly barred the relief. Claiming that the debtors' right to rescind was preserved after the state court's foreclosure judgment shows a failure to investigate the effects of the *Rooker-Feldman* doctrine, as well as claims preclusion. And, any favorable outcome was contingent on the debtors' allegation that the loan was a "consumer credit transaction" as defined in 12 C.F.R. § 226.1(c). It was clear from the pleadings and under Wisconsin law that the debtors could prove no set of

facts in support of their claim which would have entitled them to relief. Even modest inquiry into the facts and law would have revealed these infirmities. As such, some award of sanctions is appropriate.

> Under the Rule 9011:
>
> (c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
> ...
>> (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>>
>> (3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Fed. R. Bankr. P. 9011(c). The court may award sanctions of reasonable attorneys' fees and other expenses incurred by the movant as a direct result of the violation.

SBCP may submit an accounting of fees and expenses they claim were occasioned by debtors' filing of this adversary proceeding.

SBCP is entitled to have the adversary proceeding dismissed with prejudice. It is also entitled to reasonable sanctions.

It may be so ordered.

17